Mr. May, please proceed. In this appeal from the District Court, Your Honors, Dragon raised several claim construction issues. It's important, however, to first understand the background of the 444 patent. The patent claims priority to an application filed 25 years ago in 1992. It disclosed a recording and playback device designed to record a broadcast program during an interruption, for example, when you have to take a phone call, while allowing a user to immediately and seamlessly resume watching the program right from the point of interruption. Indeed, Claim 1 recites a specific recording for the interrupted broadcast program information. It does not matter whether or not a device is a continuous recording device. Claim 1 does not cite any other broadcast program information before or after the interrupted broadcast program information. Now, the main dispute in this appeal is the District Court's finding of alleged prosecution disclaimer of continuous recording devices. Notably, defendants now have backed away from the District Court's alleged disclaimer of all continuous recording devices and argue instead that only certain or certain types of continuous recording devices were disclaimed. Your Honors, you all know the standard for prosecution disclaimer is extremely high. It requires a clear and unmistakable disavowal. This is not the case here. During prosecution, the examiner rejected claims over the reference SATA multiple times. Each time, applicants argued that SATA is a continuous recording device and expressly declined to disclose the implementation of SATA's playback function, and that would require some address and command data. If applicants intended to disclaim any and all playback without discussing the specific implementation of the playback or recording function, and if the alleged disclaimer was so clear and unmistakable, the examiner would have allowed it over SATA without issuing more rejections based on SATA. In the end, the alleged disclaimer has nothing to do with the allowance or the 444 patent. In fact, the solely limitation we just discussed, that's a very narrow limitation, was the very reason... Do you believe that our prosecution disclaimer law requires that you were successful in making that argument? You are quoting to me, well the examiner didn't immediately allow the patent after this disclaimer. Do you believe it's necessary, kind of like in the field of collateral estoppel or issue preclusion, do you believe it's necessary that your disclaimer to be fouled? No, no, Your Honor, not at all. So in fact, defendants argued Dragon made that argument. That's not Dragon's position. Dragon merely recited the well-established case law that prosecution as a whole, in addition to specific SATA portions, should be considered have relevancy in the analysis of disclaimer. So here, the examiner's actions, subsequent actions, and the reason for allowance are relevant for us to understand the entire picture of alleged prosecution disclaimer. It's Dragon's position that individual portions of prosecution history that were discussed at length in parties' briefs and the prosecution history as a whole do not support a finding of prosecution disclaimer here. And moreover, even if the district court was reasonable in interpreting that there might be disclaimer here, as we all know the case law is clear when the alleged disavowal is ambiguous, even amenable to multiple reasonable interpretations, there cannot be any disclaimer. And it's Dragon's position that Dragon's interpretation of the prosecution history, the specific SATA portions, is also reasonable or even more reasonable than the district court's interpretation, because it is always Dragon's position that applicants distinguish SATA on a single, not multiple, basis. Your Honors, you may ask, why did applicants mention SATA being a continuous recording device at all? Because it provides a context for the actual distinction. Because SATA being a continuous recording device makes it more critical for SATA to disclose the exact implementation of its playback function. Again, the priority of this pattern goes back to 1992. If SATA is a continuous recording device, it appears that SATA does not have a simple on and off recording implementation. Therefore, it would require some addressing command data to identify the portion that was being played back. But there's no such implementation disclosed in SATA. That's the reason applicants argued that SATA should not render the claims unpatentable. Therefore, there's no disclaimer. Consequently, the district court's claim constructions for the terms, the broadcast program information, to begin a recording by initiating storage of the broadcast program information set memory and record key are simply incorrect. Let's just say for a minute, if I were to agree with you hypothetically, that there was no disclaimer, don't you still have a problem here because of the very claim language itself, which says said record key, it says that recording occurs when said record key is first actuated to begin a recording. So that would seem to say that the recording occurs when you first hit the record key, not that there's continuous recording. You want to understand the confusion. I think this confusion actually was also in appeared in the district court's decision. As I mentioned earlier, the 444 patent does not care about other recorded program information, only the recording, a specific recording that was interrupted, the interrupted broadcast program information. If you read Claim 1, the language here makes it very clear, to begin a recording, you have to use a set record keys first actuated to begin a recording. So if we out-focus, which is the 444 patent's invention anyway, is on that interrupted portion only, then it does not matter if there's a continuous recording device or not, because there might be multiple recording going on at the same time. We don't care about something, a device such like SATA, that starts from the very beginning, right, without record key being pressed, as long as... Do you need your interpretation of broadcast program information in order to maintain that argument that you're making right now? Do you think you do? Do you think you need us to agree with your interpretation? Not necessarily. We need the court to agree with us, there's no disclaimer. Then, I think the language itself is very clear, that's begin a recording. So as long as a cues device has a record key to begin that particular recording of the interrupted portion, even if there was other recording going on simultaneously, that does not matter here. So, Greg would request the court to find there's no disclaimer. Then the only plain construction issue remaining for the broadcast program information is the term transmitted to all users. And that, I think, impacts AT&T only. So in that situation, if the... I mean, it's our position that there are two competing dictionary definitions. There's no intrinsic evidence to support all users. In fact, that introduces additional ambiguities, right, that all users having a recording device, or all users in a particular location. So if the court also agrees with us on that all users should not be there, then we... I mean, we really don't care one way or another how the court constitutes this term. In fact, this term could be just plain and ordinary meaning. Now, can you please tell me why the sentence at page 1444 isn't a disclaimer? There are two primary places where I understand you to be distinguishing SETA. Right. Or SETA. Yes, yeah. 1444 and 1393. So why didn't you tell me why I should disregard what appears to me to be a very reasonable and correct reading of this sentence? The sentence, accordingly, the instant invention... Are you with me? Yeah, correct. I'm with you, Your Honor. Accordingly, the instant invention, as claimed, is further distinguished from the structure of SETA. So you're saying it's distinguished. Now I'm going to give you the reason. Wherein recording, as explained at column six, line 44 to 49, is continuous and never initiated or stopped. And wherein, now we're getting to a second reason, initiation of playback requires some addressing command data. So why isn't... I mean, that first wherein clause, it looks to me like you've distinguished SETA from the present invention on two grounds. The first is SETA is continuous, and the second is about the initiation of playback. You want me to believe that you only distinguish SETA on the basis of the initiation of playback. But this is quite clear that you distinguish SETA on two grounds. The fact that it continuously records. And the second ground on initiation of playback. That is unquestionably, I think, the most natural reading of this sentence. So what am I missing? Okay, Your Honor, actually that's also the district court and defendants reading. But that's not the only... I'm aware of that, but it didn't escape me. Your Honor, I agree. But that's not the only reasonable interpretation. Because if you continue to read that, it talks about wherein initiation of playback requires some addressing command data. Yes, but that's a second distinction. Those are two separate distinctions. This is not uncommon. I'm sure you know this, that when, you know, an examiner cites a reference against you, you come back with an arsenal of reasons why he's wrong. It's not uncommon to have more than one reason that you think the examiner's wrong. And so here it seems that you articulated two quite discreet reasons why you believe the examiner was wrong. Right. We understand Your Honor's interpretation. I believe that is a one of the reasonable interpretations. But Dragon does not take the position that there are two different grounds. There's only one ground here. And it's that especially the expressly undisclosed. The word expressly was bolded and one and the same. The first one is about starting and stopping and continuity. The second one is about requiring command data. It doesn't even seem like the same ground. Yeah, let me explain, Your Honor, why it's this. So why, as I mentioned, why did Appleton mention the first part at all? Because the SATA being a continuous recording device provides a context for the actual distinction. Because if the SATA is a continuous recording device, then it would naturally, the question would be, where is, how the playback is being implemented. That's the reason, even in a continuous recording device, the playback function and its implementation is super important. So that's the reason here the applicant argued that, you know, first of all, SATA is being a continuous recording device. You are well into your rebuttal time and I don't want you to use it all up. Thank you, Your Honor. Why don't you save the rest. Morning, Your Honor. It's Michael Murray for five of the defendants. Just a small housekeeping matter. I'm actually going to take ten minutes of the time. I think I'm in the record for nine, but by agreement of the statement that Dragan's counsel just made, that Judge Andrews found that there was a disclaimer on all recording devices and that we're somehow backing away from that. That's not correct. If we look at what Judge Andrews actually said, he said, quote, the applicants repeatedly distinguish SATA on the basis that SATA records continuously and the claimed device does not begin recording until the prosecution history what you think the two clearest examples because I don't mean this is a question of law right disclaimer question of law yes so you know it's great whatever the district court said about it is lovely and can be persuasive but why don't you actually show me why as a matter of law since I have to decide it de novo the two best places or three best places where you think that disclaimer is clearest in the record it's actually hard to choose your disclaimers I'm asking you to okay so let me let me point the court to 1446 1447 there's a statement there 1446 to 47 1446 47 in the appendix quote it is not clear by any means that SATA even intends to provide any control at all over the point at which recording or playback begins I'm reading off my notes so at the bottom of 1446 it is not clear by any means that SATA even intends to provide and they continue on 1447 any control at all over the point at which recording or playback begins and ends thus construed in the light most favorable to SATA again for the sake of argument only the prior art device at best is continually recording and playing back and then the the last sentence in that paragraph since the prior art makes no mention whatever of the desirability of controlling the point at which recording is to begin it cannot be argued that it would have been obvious to add and change structure as necessary to achieve an unsuggested function so here applicant is arguing that it wouldn't have been obvious to add a record key to SATA because SATA is always recording it's a continuous recording device which is really the same way that the accused devices operate in this case when you turn the device on its recording when in the case of the cable TV boxes when you start the cable TV box up and start watching a show it's automatically recording you don't need to push a record key in order to begin recording so that certainly is one good example of the disclaimer your honor pointed to part of the difficulty with what you just cited to me for me is these seem to be simply characterizations of what SATA or SATA however you say it discloses and doesn't seem like a clear statement that this is not what we do or we are distinct because you know that a clear and unmistakable disclaimer is usually this is what they do and we don't do it this statement seems a little bit more difficult to for me to see the clarity of this particular one is there a somewhere in here where you want to point out that they don't just say SATA is continually recording but that we don't continually record or that's invention right there there are multiple times in the prosecution history where they point out that they have a record key that begins with the recording process and the claims were amended actually to make it clear that when you activate the court that when you push the record key you begin the recording process and so they continually pointed out that SATA continuously records and it wouldn't have been obvious to add a record key that initiate that initiates recording so what is your next best one then well I could point to 1393 about the middle of the page SATA's device not only fails to include a record key it cannot accommodate a record key since it is always recording again pointing out that SATA is a continuous recording device and it doesn't have the record key which was the thing that with that they were emphasizing repeatedly to the patent office as distinguishing their invention they have a record key to start the recording process SATA doesn't need a record key now I'd also like to point out that you know much as dragon wants to make this appeal all about disclaimer it's really not all about disclaimer the plain language of the claims completely supports the claim constructions issued by the district court for example but to begin to begin a recording by initiating storage of the broadcast program information and said memory in a term the court construed as being to begin a recording by causing the storage of broadcast program information that otherwise would not have been stored in said memory unit so dragon emphasizes the the a recording part of that and tries to argue using their unusual construction of the broadcast program information arguing that the broadcast program information is a different term than broadcast program information and has a completely different meaning which the court rejected but they're not really accounting for this language by initiating storage of broadcast program information when you begin the recording the plain language of the claim you initiate storage of the broadcast program information that clearly means just by its plain language that if you don't do that then you will not be storing the broadcast program information what else could initiating storage mean and dragon has never really plain language of the claim means you initiate storage you start storage by pushing the record key and that fully supports the court's construction and supports the the stipulated entry of of judgment of non-infringement because that's not how any of the keys devices work you turn the device on and it begins recording you don't have to push any button to initiate storage now dragon argues in the great brief at 17 that judge Andrews relied solely on the prosecution disclaimer to support his construction of this term and that's just not true judge Andrews rejected dragons construction because it quote eliminates to begin a recording and instead focuses on retrieval of information this is in I was your honor that's an appendix at page 112 so the beginning recording is not actually about beginning recording his dragon is never again grappled with the plain language of the claim so judge Andrews did not rely solely on the disclaimer to support this term finally the specification just plainly supports that construction to the specification says quote basic operation of the instant invention begins with the user watching or listening to desired programming and recorder 10 off so that's the applicant and this is the appendix at 125 which is column 5 lines 20 to 22 of the patent basic operation of the instant invention in every embodiment in this patent in every embodiment the recorder is off you push the record button and then the recorder comes on and and initiates storage of the broadcast program I think the stronger argument is the plain language of the claim the disclaimer of course because they explain this language of the patent office over and over and over again and said it's not about continuous recording it's about you need a record key to start the recording process so certainly that's a stronger argument your honor I agree but I think when an inventor or an applicant says starts talking about the instant invention the operation of the instant invention certainly I think that's something you can take into account and it's again it's the only way that it's done in the specification I'm gonna have to stop here good morning your honor Michael Hawes representing AT&T direct TV and dish networks I'd actually like to start a question you asked judge stole covering only the exact same things he covered or something different something different your honor we have a as was mentioned by the other council we have a different non-infringement argument for AT&T but there was a point that I just wanted to clarify which is you would ask about the question about how even if they get the construction they want how that works and the answer is that it's circular in that they they argued that program information was just the stuff that happened after you press the record key so because they had a circular argument where they said well the only thing that's program information is what happens after the record key and then they said the program that the record key initiates program information they basically made that language the begin language surplusage because there was no way the way they defined it for you to ever have program information before you press the record key so it was a circularity argument that allowed them to do that the second thing I point out is that on page appendix page 1447 it was previously discussed and this is about five lines down five and six lines down they did say this does not achieve the utility of the instant invention this is are we still on the same issue you said you are gonna cover a different issue I am your honor and I just want to point out one thing in the appendix and I'm we discussed the language at the beginning of that paragraph and I just want to point out that right after that language it says this does not achieve the utility of the instant invention and you your honor asked about how did it relate to the invention and that's where they said it related to the invention and that's the same instant invention language that you pointed out in 1444 moving to the broadcast program information issue driving to the position below that there is no need to construe broadcast program information and so the district court looking for the plain and ordinary meaning of that term looked to the specification and dragon agrees there's no definition of that term in the specification so the district court turned and looked to technical dictionaries from the proper time frame the district court made a finding of fact that the person of ordinary skill in the art would have understood broadcast to require sending it to all users dragon does not contradict the fact that that was a finding of fact we have said that Teva gives deference to that finding of fact again dragon does not contradict that and what that means is that dragon needed to show that that was clearly erroneous under the Teva standard again nowhere in their briefing does dragon ever assert that was clearly erroneous where can you tell me where the finding of fact is yes so if you turn to the claim construction your honor and I'm looking at appendix page 107 and this is right at the bottom your honor it's the third line from the bottom and the second line from the bottom I find as a fact based on the technical dictionaries AT&T introduced that broadcast information is information transmitted to all users dragon never disagrees with that dragon never disagrees that Teva requires that to be clearly erroneous for it to be overturned and dragon never takes the position in any of its briefs that this was clearly erroneous this court should start from the foundation that the person of ordinary skill in the art at the relevant time understood broadcast to require it be transmitted to all users okay so this is the different argument because AT&T transmits in a different way right that's right all right I get it this is an independent non-infringement position for AT&T for one of my clients yes so that leaves us with only two arguments they make the first argument they make as well but you don't find the all users definition in the intrinsic evidence well first of all your standard for overturning the plain and ordinary meaning is that it be unambiguously clear that there's a different meaning and they don't argue that but second of all it actually supports the district court the reason the all users language isn't in the intrinsic evidence is because the word broadcast is in the intrinsic evidence and the district court said the person of ordinary skill in the art reading this would understand that broadcast means all users why then would the intrinsic evidence say it yet again when it was already using the word broadcast I need to ask you a factual question very quick because your time is out but I'll ask you there was a stipulation of non-infringement was there a stipulation of non-infringement on the basis of this issue there was your honor if you look at AT&T stipulation of non-infringement and that's in the appendix at page 11 and 12 okay so even if for some reason we didn't buy into the disclaimer argument your client also has a stipulation of non-infringement which would be independently upholdable in light of the transmitted to all users that's right okay I understand your argument thank you very much mr. mr. made you I'm sorry your time is up thank you for your argument mr. may you have some rebuttal time it's the problem when you split up arguments you know you can run out of time you know just a few points regarding prosecution disclaimer and I think it's important to know that the parties do not agree the pain mean plain language of this claim controls so now think about it if the accused devices do not have any record key why they care about prosecution disclaimer we all agree the claim one of the 444 pattern cares about I mean specifically recites a record key is first actuated to begin a recording for the interrupted portion so why that matters and that actually also relevant to whether the disclaimer is clear and mistakable the fact that setup being a continuous recording device leaves a question where the record key is implemented that's reason applicants always argue in a single sentence it's not a situation where George Moore mentioned earlier this is what they do and we didn't do that for two reasons here's a reason one here's a reason two no African didn't do that in multiple examples opposing counsel pointed out dragon always go into detail I mean everything goes into detail implementation there's no record key may be mentioned at all that's reason epic and distinguished setup so even even if they I mean the district court and interpretation interpretation is reasonable there's also alternative reasonable interpretation because the standard for prosecution disclaimer is so high that if you want to find this disclaimer is arguable it's not clear and unmistakable and there should be no disclaimer at all then quickly on the transmitted to all users you have a very steep hill to climb here I mean you've got a judge that is had many many many patent cases and I believe he said in his opinion if I'm not mistaking this is the clearest case of disclaimer he's ever seen the second clearest second right so your honor so that's reason we disagree I think a lot of confusion even today is what clean language talks about and that's reason I started with my argument that claim one I mean the invention talks about interrupted portion only so we don't care whether there's a separate recording device that is continuous recording I think within that context we believe the district court's language is unnecessarily strong which actually triggered additional proceedings and for the reasons I just mentioned earlier and also in the briefs we request that that this court vacate the district court's instructions. Thank you Mr. May. Okay, so you can stand up and sit down for your fifth and sixth time in just a second. Next case is 2016-2468 Dragon versus Dish Network.